UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-CR-20173-KMM

UNITED STATES OF AMERICA

vs.

JEFFERSSON ARANGO CASTELLANOS,

Defendant.

_____/

### FACTUAL PROFFER

Defendant, Jeffersson Arango Castellanos, his counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

Prior to and after March 5 and 6, 2020, in Bogota, Colombia, and other places, the Defendant conspired with Kenny Julieth Uribe Chiran ("Uribe Chiran"), Pedro Jose Silva Ochoa ("Silva Ochoa") and others to unjustly enrich themselves through, among those things: (a) targeting individuals in Bogota, Colombia; (b) incapacitating, intoxicating, or otherwise rendering defenseless the individuals with drugs or alcohol, including by using benzodiazepines; (c) kidnapping, seizing, abducting, holding, and carrying away the individuals; (d) stealing the individuals' possessions and valuables, and obtaining their credit and debit card information; and (e) using the stolen possessions, valuables, and information for the personal benefit of the defendants and their co-conspirators as well as the benefit of others.

As part of their conspiracy, the Defendant, Uribe Chiran, Silva Ochoa, and others (collectively, "the Conspirators") would visit high-end entertainment neighborhoods in Bogota to identify potential targets. The Conspirators would incapacitate, intoxicate, and otherwise render

their targets defenseless by drugging them. The Conspirators would then kidnap, hold, and carry away their targets; touch, handle, and hold them; and steal their possessions and valuables and obtain their credit card and debit card information. The Conspirators would then utilize the individual's stolen credit and debit cards, and credit and debit card information, to withdraw money from ATMs throughout Bogota, purchase goods, and execute transactions on the stolen cards. The Conspirators would then drop off the individuals around Bogota and, in the process, touch, handle, and physically leave them on the side of the road.

On and around March 5 and 6, 2020, Victim 1 and Victim 2 (collectively, "the Victims") were active-duty members of the United States military. As part of their official duties, they were sent to Bogota, Colombia, including during the events of March 5 and 6, 2020. During their time in Bogota, Victim 1 and Victim 2 were Internationally Protected Persons as defined by 18 U.S.C. §§ 112(c), 1201(a)(4) and 1116(b).

In the evening of March 5, 2020, Silva Ochoa picked up the Defendant and Uribe Chiran in a green Renault 9 and brought them to the Zona T area of Bogota. After arriving in the Zona T area, Silva Ochoa dropped off the Defendant and Uribe Chiran, while he remained in the car.

That same night, March 5, 2020, the Victims went out in Bogota, eventually going to the Zona T neighborhood. Around 11:00pm, the Victims entered an establishment called the Colombian Pub. The Defendant and Uribe Chiran were also present in the Colombia Pub at the same time as the Victims. At some point, the Defendant approached the Victims in the pub and, without their knowledge, incapacitated, intoxicated, and otherwise rendered the victims defenseless by putting drugs in their drinks. In a statement to law enforcement, the Defendant explained that he used drugs in a paste or liquid form to put into his victims' drinks. Subsequent toxicology screenings found that Victim 1 and Victim 2 had benzodiazepines in their system.

Around 2:30a.m. on March 6, 2020, the Defendant and Uribe Chiran left the Colombian Pub with the Victims. As the Victims walked, they stumbled and had difficulty keeping their balance. At one point, as Victim 1 struggled to walk, Uribe Chiran put her arm around his waist and he had his arm on her shoulder. The Defendant and Uribe Chiran walked with the victims several blocks to meet Silva Ochoa in the green Renault 9. The Defendant, Uribe Chiran, and the Victims all entered the car with Silva Ochoa, who then drove away.

While the victims were intoxicated, the Defendant, Uribe Chrian, and Silva Ochoa took their possessions, including their wallets, debit cards, credit cards, and cell phones. The Defendant further manipulated Victim 2 into providing him with Victim 2's debit card PIN code.

After taking the Victims' possessions and Victim 2's debit card information, the Defendant, Uribe Chiran, and Silva Ochoa drove around Bogota, Colombia using and attempting to use Victim 2's ATM card and Victim 1's credit card, including at the following locations:

- At approximately 3:40am, the Defendant entered a Servibanca at Cl 27 #25-11 and attempted to make two ATM withdraws with Victim 2's debit card.

- At approximately 5:32am, the Defendant entered another Servibanca located at Cra 32 #25B-75 and made two ATM withdrawals with Victim 2's debit card. Bank records show that the Defendant withdrew approximately $350 dollars from the two transactions.

- At approximately 5:50am, Defendant again entered the Servibanca at Cl 27 #25-11 and withdrew money from the ATM machine there using Victim 2's ATM card. Bank records show that the Defendant withdrew approximately $125 in this transaction.

- At approximately 6:50am, the Defendant entered a Servibanca at Cra 25#17-93 and attempted to make an ATM withdrawal with Victim 2's debit card.

- At approximately 7:20 am, the Defendant and Uribe Chiran entered the Calima Shopping Center, located at Cl. 19 #28-80, where they used Victim 1's credit card at a Tostao Café y Pan and used Victim 2's ATM card to withdraw money at a Banco Popular ATM machine. Bank records show that the Defendant withdrew approximately $125 in this transaction.

In addition to these transactions, the Defendant, Uribe Chiran and Silva Ochoa used Victim 1's credit card to make and attempt to make several unauthorized purchases and transactions at various stories, including Di Paso (the meat store) and City Tires.

Around 6:45a.m., the defendant, Uribe Chiran and Silva Ochoa dropped off Victim 1 onto the street on Calle 25. Video footage shows Victim 1 stumble and fall down on the street. The defendant then lifted Victim 1 off of the street and guided him back to the sidewalk before leaving Victim 1 there. An individual saw Victim 1 stumbling and falling as he walked down the street, and this person called Colombia 123 (the equivalent of calling 911 in the U.S.) to reported what she observed to authorities. A Colombia National Police Officer responded and called for an ambulance to bring Victim 1 to the hospital. Victim 1 was released from the hospital several hours later and returned to his apartment, where U.S. Embassy personnel were waiting for him and took him to another hospital.

At some point in the early morning of March 6, the Defendant, Uribe Chiran, and Silva Ochoa also dropped of Victim 2 in the same neighborhood as where they dropped off Victim 1. A taxicab driver found Victim 2 and helped him get to his apartment building. At approximately 6:45 a.m., Victim 2 arrived at his apartment building and video footage of his arrival shows him stumbling as he enters the building and goes to his apartment. U.S. Department of Defense

personnel located Victim 2 at his apartment in the afternoon of March 6, 2020, and took him to the hospital.

The United States has jurisdiction over these crimes pursuant to 18 U.S.C. § 112(e) and § 1201(e) because the Victims were Internationally Protected Persons and representatives, officers, employees or agents of the United States.

The parties agree that the above facts, which do not include all the facts known to the Government and the Defendant, are sufficient to prove the charges in the Indictment beyond a reasonable doubt.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

NICOLE M. ARGENTIERI
ACTING ASSISTANT ATTORNEY GENERAL

Date: 1/26/24          By: _____
                            BERTILA LILIA FERNANDEZ
                            ASSISTANT UNITED STATES ATTORNEY

Date: 1/26/24          By: _____
                            CLAYTON O'CONNOR
                            TRIAL ATTORNEY, DOJ CRIMINAL DIVISION

Date: 1/26/24          By: _____
                            LAUREN KRASNOFF  MaeAnn Dunker
                            ATTORNEY FOR DEFENDANT

Date: 1/26/24          By: _____
                            JEFFERSSON ARANGO CASTELLANOS
                            DEFENDANT